# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROC SERVICE COMPANY, LLC,**
**Employer Below, Petitioner**

**FILED**
**September 5, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-152**          (JCN: 2022020492)

**ANTONIO SMITH,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner ROC Service Company, LLC, ("ROC") appeals the March 20, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Antonio Smith filed a timely response. [1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's three separate orders denying compensability and, instead, holding the claim compensable for a left middle finger crush injury with a full-thickness tear of the conjoined tendon of the extensor apparatus.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 2, 2022, around noon or 1:00 p.m., Mr. Smith reported to his supervisor, Scott Rush, that he had injured his hand while working on a well site. Mr. Smith finished his shift but called Mr. Rush later that evening, indicating that he was going to the emergency room ("ER") to have his hand evaluated as he was still experiencing pain. Mr. Rush instructed Mr. Smith to notify Adam Young, the Environmental Health & Safety Manager, of his injury. Mr. Smith called Mr. Young and advised him that he was going to the ER. According to Mr. Young, he and Mr. Smith discussed that he should visit ROC's occupational medical doctor first thing in the morning.

Medical records from Wheeling Hospital dated March 2, 2022, indicate that Mr. Smith presented to the ER and reported that he smashed his hand at work while wrenching on a pipeline. The records indicate significant swelling of the middle finger, though an x-

---

[1] ROC is represented by Toni J. Williams, Esq. Mr. Smith is represented by G. Patrick Jacobs, Esq.

1

ray showed no acute fracture. The impression was a crush injury of the left hand with decreased range of motion of the middle finger.

Per a notarized statement authored by Mr. Young, Mr. Smith texted him late in the evening of March 2, 2022, indicating that he would be returning to work the next morning. Mr. Young also indicated that Mr. Smith performed his regular duties the next few days and did not request any accommodations.

On March 10, 2022, Mr. Smith was seen by Jack Gelman, M.D., a plastic surgeon. Dr. Gelman reviewed the x-ray of Mr. Smith's left hand and diagnosed a crush injury of the left hand without fracture or dislocation. Dr. Gelman recommended four weeks of occupational therapy and that Mr. Smith perform duties with his right hand only for those four weeks.

Mr. Smith underwent an MRI of his left hand on March 27, 2022. The MRI report indicated that Mr. Smith had a full-thickness tear of the conjoint tendon of the extensor apparatus, and a consultation with a hand specialist was recommended. On March 29, 2022, Mr. Smith was seen by Scott Leslie, M.D., an occupational medicine physician recommended by ROC. Upon examination, Dr. Leslie diagnosed "[o]ther injury of extensor muscle, fasc[i]a and tendon of left middle finger at wrist and hand level, subsequent encounter . . . , conjoined tendon tear." Dr. Leslie recommended a referral to an orthopedist. Dr. Leslie's report did not indicate what Mr. Smith's work status should be, only that it was discussed with Mr. Smith and a ROC representative. Subsequently, on April 16, 2022, Dr. Leslie completed the physician's section of an Employees' and Physicians' Report of Occupational Injury form, indicating an occupational injury of left middle finger crush injury.[2]

Mr. Smith was seen by Dr. Gelman and Michael Meldon, M.D., on April 28, 2022. Mr. Smith indicated that he had not participated in occupational therapy as previously recommended per the advice of his "companies and his Occupational medicine teams." Drs. Gelman and Meldon disagreed with Mr. Smith's occupational medicine team's recommendation of postponing therapy, noting that Mr. Smith demonstrated no improvement in eight weeks and, in fact, had worsening range of motion and functional ability of his hand. Drs. Gelman and Meldon again recommended occupational therapy and indicated that Mr. Smith was not to use his left hand for four weeks.

On July 6, 2022, the claim administrator denied the compensability of Mr. Smith's claim, stating that the claim had been determined to be non-compensable and noting that a coworker working alongside Mr. Smith had not witnessed any injury. The claim administrator issued two subsequent corrected orders dated August 31, 2022, and September 8, 2022, which reaffirmed denying compensability of the claim, but added that

---

[2] Mr. Smith completed his section of the form on June 26, 2022.

non-work-related conditions had been reported and were the cause of Mr. Smith's need for medical treatment and time off work as a basis for denying the claim. Mr. Smith protested, and he testified via deposition on September 29, 2022, wherein he described the mechanism of injury, reporting the injury to his supervisor and Mr. Young, and subsequent treatment. Mr. Smith also addressed issues raised by counsel for ROC, including missing work for personal reasons; being unhappy with the light-duty work he was given following his injury to his hand; and experiencing a stroke-like episode around March 25, 2022, which resulted in him being unable to return to work due to restrictions his doctors put in place.

In the ensuing litigation, ROC submitted four notarized statements of ROC employees in an effort to attack the credibility of Mr. Smith's claim, including the above-mentioned statement of Mr. Young. Mr. Young provided a timeline of Mr. Smith's injury and noted issues with Mr. Smith's communication and performance following the injury. For instance, he indicated that Mr. Smith failed to keep him apprised of medical appointments; failed to timely inform him of alleged medical restrictions with regard to his left hand; and missed work for personal reasons, leading to write ups. Mr. Young further noted that he had attended Mr. Smith's appointment with an occupational medicine doctor and that Mr. Smith had been released to full duty. Despite being released to full duty, Mr. Young noted that he allowed Mr. Smith to work at the "shop/yard" performing low-impact work. However, Mr. Smith began to complain about the work, performed work on his personal car during work hours, appeared to use his left hand without issue, and indicated his intent to file for disability. Mr. Young noted that on March 25, 2022, he received notification that Mr. Smith had experienced a seizure-like episode outside of work and was in the hospital. Mr. Young lastly noted that he had no contact with Mr. Smith after March 29, 2022, and that Mr. Smith never provided any documentation regarding work restrictions with regard to his left hand.

Mr. Rush, Mr. Smith's supervisor, also authored a notarized statement in which he noted that Mr. Smith was working in an enclosed cabinet on the day of his alleged injury, which was contrary to Mr. Smith's deposition testimony that melting ice or snow caused his hand to slip and be crushed by a wrench. Mr. Rush further indicated that, upon reporting his injury, Mr. Smith did not know how it occurred, could not replicate what he was doing, and could not show how the injury occurred. Mr. Rush stated that he looked at Mr. Smith's hand and did not see any bruising, swelling, or anything else indicating injury. Mr. Rush also provided a timeline of the events, noting Mr. Smith's requests to leave work for personal reasons and the absence of requests for accommodations due to the alleged injury.

The third notarized statement was authored by Drew Cowden, District Manager. Mr. Cowden stated that he was informed of the alleged injury on March 3, 2022, and that he received no notifications of any ongoing problems with Mr. Smith's performance from March 3-9, 2022. Mr. Cowden also included a timeline for Mr. Smith's write-ups for missing work and being late, his requests for time off for personal reasons, and his seizure.

3

The fourth statement was authored by Krystal Archibeque, an HR manager. Ms. Archibeque described her interactions with Mr. Smith following his March 25, 2022, seizure. According to Ms. Archibeque, Mr. Smith stated that he had a seizure-like episode while arguing with his girlfriend and requested information on how to apply for short-term disability. Ms. Archibeque noted that she received documentation on April 1, 2022, which indicated that Mr. Smith had numerous restrictions due to the seizure-like episode, and that she informed Mr. Smith that he was unable to work due to those restrictions, though his employment would remain active. Ms. Archibeque stated that Mr. Smith repeatedly asked about short-term disability, asked whether his seizure was work-related "since his doctor said it was stress induced," and missed or rescheduled various doctor appointments. Ms. Archibeque noted that Mr. Smith was eventually let go from his position due to missing work, exhausting his personal leave, failing to communicate, and generally needing to fill his position. She further noted that at no time between March 2, 2022, and July 19, 2022, was Mr. Smith on work restrictions due to his left hand.

ROC also submitted a sworn statement from Shari L. Harkins, an employee of ROC's counsel, who discussed her requests to WVU Medicine regarding Mr. Smith's missed appointments and any reasons provided.

By order entered on March 20, 2023, the Board reversed the claim administrator's three orders denying compensability of the claim and held the claim compensable for a left middle finger crush injury with a full-thickness tear of the conjoined tendon of the extensor apparatus. The Board found that Mr. Smith reported an injury to his supervisor on the date of injury, which Mr. Rush confirmed in his notarized statement. The Board further found that Mr. Smith sought treatment on the date of injury, and that the ER records document that he reported smashing his hand while at work. Moreover, Mr. Smith completed an Employees' and Physicians' Report of Occupational Injury, which was signed by Dr. Leslie, an occupational medicine physician, indicating a diagnosis of a left middle finger crush injury caused by occupational injury. The Board noted that Mr. Smith's testimony, as well as the statements submitted by ROC, indicated that ROC employees either provided Mr. Smith transportation or met him at his occupational medicine appointment; that Mr. Young's statement indicated that he advised Mr. Smith to see the occupational medicine doctor; and that ROC's occupational medicine doctor (Dr. Leslie) diagnosed an occupational injury. As such, the Board concluded that the evidence established that Mr. Smith sustained a crush injury to his left hand at work.

The Board acknowledged ROC's arguments regarding the fact that Mr. Smith continued to work without complaints of pain or requests for accommodations in the days after his injury but found that Mr. Smith was provided accommodations of light duty, whether requested or not. Lastly, the Board noted that a significant portion of the record addressed Mr. Smith's non-work-related seizure and found that the basis of Mr. Smith's missing work after the seizure was related to the issue of temporary total disability benefits, not compensability. ROC now appeals the Board's order holding the claim compensable.

4

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, ROC argues that the Board erred in reversing the claim administrator's orders and holding the claim compensable for a left middle finger crush injury with a full-thickness tear of the conjoined tendon of the extensor apparatus. ROC argues that the evidence demonstrates that Mr. Smith's credibility is questionable, especially in light of ROC's employees' notarized statements, and that the Board failed to adequately consider the notarized statements in making its decision. ROC avers that the evidence demonstrates that Mr. Smith did not sustain a compensable injury and that "his reports and testimony contain significant credibility issues, many contradictions, inconsistencies[,] and inaccuracies[,] as well as issues involving his personal life[,] as well as non-work-related medical issues that eventually took him out of work" which demonstrate that no occupational injury occurred.

We disagree and find no error in the Board's decision to hold the claim compensable for a left middle finger crush injury with a full-thickness tear of the conjoined tendon of the extensor apparatus. While ROC provides a laundry list of purported inconsistent statements and questionable actions by Mr. Smith, the fact of the matter remains that Mr. Smith reported an injury to his supervisor and proceeded to the ER after his shift, at which point he was diagnosed with a crush injury to his left hand. This diagnosis was corroborated by an MRI, which revealed a full-thickness tear of the conjoint tendon of the extensor apparatus, and by Dr. Leslie, ROC's chosen occupational medicine physician, who diagnosed "[o]ther injury of extensor muscle, fasc[i]a and tendon of left middle finger at wrist and hand level, subsequent encounter . . . , conjoined tendon tear." Indeed, Dr. Leslie

completed the Employees' and Physicians' Report of Occupational Injury form and indicated that Mr. Smith's left middle finger crush injury was an occupational injury.

ROC fails to address this medical evidence or rebut it with medical evidence of its own, instead, simply attacking the credibility of Mr. Smith with notarized statements of other ROC employees and thereby questioning his claim. Credibility determinations are within the discretion of the Board, and this Court declines to disturb such determinations. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").[3]

In sum, the medical evidence submitted by Mr. Smith is sufficient to establish that he sustained an occupational injury. Accordingly, we affirm the Board's March 20, 2023, order holding the claim compensable for a left middle finger crush injury with a full-thickness tear of the conjoined tendon of the extensor apparatus.

Affirmed.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

---

[3] We further note that, contrary to ROC's argument, several of the notarized statements corroborate Mr. Smith's account of the events. For example, Mr. Rush acknowledged that Mr. Smith reported an injury to him around lunchtime on March 2, 2022, and Mr. Rush, Mr. Young, and Mr. Cowden all admitted that they were informed of the injury either on the same day of the injury or the day after, which is consistent with Mr. Smith's testimony and the evidence of record. Moreover, we note that while ROC relies heavily on the fact that Mr. Smith took personal leave during that time and also suffered a seizure-like episode (which resulted in work restrictions) to support its assertions that Mr. Smith is not credible, it fails to explain how such facts impact Mr. Smith's credibility or demonstrate how these facts have any bearing on the compensable diagnosis, which was confirmed by ER staff, Dr. Gelman, and Dr. Leslie and was corroborated by an MRI. As noted by the Board, any allegations surrounding missed work, or a non-work-related injury are relevant to the issue of temporary total disability benefits rather than compensability.